ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - x
                                        :
UNITED STATES OF AMERICA                :    <u>SEALED</u>
                                        :    <u>INDICTMENT</u>
            -v-                         :
                                        :    07 Cr.
CARMEN CICALESE,                        :
     a/k/a "Buddy,"                     :
JULIUS MIGDAL,                          :
     a/k/a "Jay"                        :
FRANCIS PUGLIESE,                       :
     a/k/a "Butch,"                     :
PATRICK CICALESE,                       :
MARC GROUP,                             :
     a/k/a "Box,"                       :
LOUIE SANTOS,                           :
     a/k/a "Brown,"                     :
     a/k/a "Lou the Shoe,"              :
PAUL CELLURA,                           :
     a/k/a "Coppertone,"                :
FEDERICO SEMENTINI,                     :
     a/k/a "Macie,"                     :
CARL MURACO,                            :
     a/k/a "Sheepshead,"                :
KEITH EAGLE                             :
     a/k/a "Sands,"                     :
ANDREW FARRO,                           :
     a/k/a "Dukie,"                     :
LANGHORNE CARTER RORER II,              :
     a/k/a "Lang,"                      :
     a/k/a "Cleaver,"                   :
            Defendants.                 :

- - - - - - - - - - - - - - - - - - - - x

07 CRIM 1125

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: DEC 11 2007

## COUNT ONE

(GAMBLING CONSPIRACY)

The Grand Jury charges:

### BACKGROUND

1.   At all times relevant to this Indictment, CARMEN CICALESE, a/k/a "Buddy," the defendant, operated a business in Costa Rica that provided services to sports bookies in New York and other places in the United States (the "Cicalese Wireroom" or "Wireroom").  The Cicalese Wireroom charged bookies a weekly fee of approximately $15 to $30 for each gambler a bookie registered with it.  In return, registered gamblers were able to place bets on sporting events at odds set by the Cicalese Wireroom via a toll-free phone number and through various internet sites the Cicalese Wireroom maintained, including datawager.com and betwestsports.com.

2.   The Cicalese Wireroom did not itself take an interest in the outcome of the wagers.  The betwestsports.com website describes the operation as follows: "BetWestSports.com is an offshore data processing service that provides land-based sportbooks an offshore call center and accounting services. We are NOT a Sportsbook. We do NOT take action ourselves nor pay out players. We field calls, record wagers and process results on behalf of land-based sportbooks.  All money in your account, whether it be a positive or negative figure is between you and

2

your sportbook. Your sportbook is given regular reports stating what your balance is. It is the responsibility of your sport book to pay and collect from you."

3.    Bookies paid the fees owed to the Cicalese Wireroom to representatives of the Cicalese Wireroom in the United States who were responsible for collecting the money on behalf of the wireroom, including defendants JULIUS MIGDAL, a/k/a "Jay" and FRANCIS PUGLIESE, a/k/a "Butch."   These collectors - sometimes referred to among gambling organizations as "runners" - would in turn transfer the money back to the Cicalese Wireroom through various techniques.  On some occasions, runners transferred money in the United States to representatives of the Cicalese Wireroom, including PATRICK CICALESE, the defendant.  On other occasions, runners transferred money to Costa Rica through the use of the Green Dot Financial Network ("Green Dot") which sells debit cards that allow any person with the cardholder's account information to draw against the value of the card at locations where Mastercard or Visa are accepted.  The runners purchased Green Dot Card accounts anonymously with cash, and then provided employees of the Cicalese Wireroom with the account numbers.

4.    The Cicalese Wireroom serviced several hundred bookies, each of whom had numerous gambling customers registered with the Wireroom.  One Wireroom runner alone, defendant JULIUS

MIGDAL, a/k/a "Jay," received approximately $100,000 a month for the Wireroom from the approximately 30 bookies from whom he was responsible for collecting.  Through this arrangement, the Wireroom received millions of dollars in annual revenue each year.

### The Defendants

5.    At all times relevant to this Indictment, CARMEN CICALESE, a/k/a "Buddy," the defendant, was the principal manager of the Cicalese Wireroom.

6.    At all times relevant to this Indictment, JULIUS MIGDAL, a/k/a "Jay" and FRANCIS PUGLIESE, a/k/a "Butch,"  the defendants, served as runners, collecting fees from New York-area bookies whose gambling customers were registered with the Cicalese Wireroom.

7.    At all times relevant to this Indictment, PATRICK CICALESE, the defendant, collected Cicalese Wireroom fees from JULIUS MIGDAL, a/k/a "Jay," the defendant, and arranged for the transfer of those fees to the Cicalese Wireroom.

8.    At all times relevant to the Indictment MARC GROUP, a/k/a "Box," LOUIE SANTOS, a/k/a "Brown," a/k/a "Lou the Shoe," PAUL CELLURA, a/k/a "Coppertone," FEDERICO SEMENTINI, a/k/a "Macie," CARL MURACO, a/k/a "Sheepshead," KEITH EAGLE, a/k/a "Sands," ANDREW FARRO, a/k/a "Dukie," and LANGHORNE CARTER RORER II, a/k/a "Lang," a/k/a "Cleaver," the defendants, were

4

United States-based sports bookies who registered gamblers with
the Cicalese Wireroom and paid fees for such gamblers to JULIUS
MIGDAL, a/k/a "Jay," the defendant.

## The Conspiracy

9.    From at least in or about 2005 until the present,
in the Southern District of New York and elsewhere, CARMEN
CICALESE, a/k/a "Buddy," JULIUS MIGDAL, a/k/a "Jay," FRANCIS
PUGLIESE, a/k/a "Butch," PATRICK CICALESE, MARC GROUP, a/k/a
"Box," LOUIE SANTOS, a/k/a "Brown," a/k/a "Lou the Shoe," PAUL
CELLURA, a/k/a "Coppertone," FEDERICO SEMENTINI, a/k/a "Macie,"
CARL MURACO, a/k/a "Sheepshead," KEITH EAGLE, a/k/a "Sands,"
ANDREW FARRO, a/k/a "Dukie," and LANGHORNE CARTER RORER II, a/k/a
"Lang," a/k/a "Cleaver," the defendants, and others known and
unknown, unlawfully, willfully and knowingly combined, conspired,
confederated and agreed together and with each other to commit an
offense against the United States, to wit, to violate Title 18,
United States Code, Section 1955.

10.    It was a part and an object of the conspiracy that
CARMEN CICALESE, a/k/a "Buddy," JULIUS MIGDAL, a/k/a "Jay,"
FRANCIS PUGLIESE, a/k/a "Butch," PATRICK CICALESE, MARC GROUP,
a/k/a "Box," LOUIE SANTOS, a/k/a "Brown," a/k/a "Lou the Shoe,"
PAUL CELLURA, a/k/a "Coppertone," FEDERICO SEMENTINI, a/k/a
"Macie," CARL MURACO, a/k/a "Sheepshead," KEITH EAGLE, a/k/a
"Sands," ANDREW FARRO, a/k/a "Dukie," and  LANGHORNE CARTER RORER

II, a/k/a "Lang," a/k/a "Cleaver," the defendants, and others known and unknown, unlawfully, willfully, and knowingly would and did conduct, finance, manage, supervise, direct, and own all and part of an illegal gambling business, namely a business that engaged in and facilitated sports bookmaking, in violation of New York State Penal Law Sections 225.00 and 225.05, and which business involved five and more persons who conducted, financed, managed, supervised, directed, and owned all and part of it, and which business had been and had remained in substantially continuous operation for a period in excess of thirty days and had gross revenues of $2,000 in a single day, in violation of Title 18, United States Code, Section 1955.

<u>Overt Acts</u>

11.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about January 21, 2006, at approximately 11:04 a.m., CARMEN CICALESE, a/k/a "Buddy," and JULIUS MIGDAL, a/k/a "Jay," the defendants, had a phone conversation about how much money MIGDAL had collected from various bookies on behalf of the Cicalese Wireroom.

b.   On or about February 4, 2006, at approximately 10:46 a.m., FRANCIS PUGLIESE, a/k/a "Butch," the defendant had a

phone conversation with MIGDAL about collecting money owed by bookies to the Cicalese Wireroom.

     c.    On or about May 7, 2005, PUGLIESE met with MIGDAL in Manhattan, New York about money owed by bookies to the Cicalese Wireroom.

     d.    On or about March 2, 2006, at approximately 3:40 p.m., PATRICK CICALESE, the defendant, had a phone conversation with MIGDAL about the risk to PATRICK CICALESE if he was caught traveling with money.

     e.    On or about December 16, 2005 PATRICK CICALESE met with MIGDAL in Queens, New York to collect at least approximately $200,000 in cash paid by bookies owing money to the Cicalese Wireroom.

     f.    On or about November 21, 2005, in Queens, New York MARC GROUP, the defendant, met with MIGDAL about registering his bettors with the Cicalese Wireroom.

     g.    On or about November 21, 2005 at approximately 1:54 p.m., GROUP had a phone conversation with a co-conspirator not identified as a defendant herein ("CC-1") about the operations of the Cicalese Wireroom.

     h.    On or about January 3, 2006 at approximately 1:03 p.m., LOUIE SANTOS, a/k/a "Brown," a/k/a "Lou the Shoe," spoke by phone with MIGDAL to arrange a meeting.

    i.    On or about January 4, 2006, in Springfield, Massachusetts, SANTOS gave MIGDAL approximately $17,200 owed to the Cicalese Wireroom.

    j.    On or about April 10, 2006 at approximately 3:29 p.m., FEDERICO SEMENTINI, a/k/a "Macie," the defendant, had a phone conversation with MIGDAL about how much SEMENTINI's gamblers had won and lost.

    k.    On or about November 21, 2005, in Queens, New York, SEMENTINI gave MIGDAL approximately $1,350 owed to the Cicalese Wireroom.

    l.    On or about November 14, 2005 at approximately 12:48 a.m., CARL MURACO, a/k/a "Sheepshead," the defendant, had a phone conversation with MIGDAL to arrange a meeting.

    m.    On or about November 16, 2005, in Queens, New York, MURACO gave MIGDAL approximately $4,500 owed to the Cicalese Wireroom.

    n.    On or about March 13, 2006 at approximately 12:32 p.m. PAUL CELLURA, a/k/a "Coppertone," the defendant, had a phone conversation with MIGDAL to arrange a meeting.

    o.    On or about March 14, 2006, in Wantagh, New York, CELLURA gave MIGDAL approximately $7,200 owed to the Cicalese Wireroom.

    p.    On or about February 9, 2006 at approximately

8

10:56 a.m. MIGDAL had a phone conversation with CC-1 about collecting money owed to the Wireroom by KEITH EAGLE, a/k/a "Sands," the defendant.

q. On or about February 10, 2006, in Staten Island, New York, EAGLE gave MIGDAL approximately $10,000 owed to the Cicalese Wireroom.

r. On or about December 2, 2005, in Staten Island, New York, ANDREW FARRO, a/k/a "Dukie," the defendant, gave MIGDAL approximately $3,000 owed to the Cicalese Wireroom.

s. On or about December 29, 2005, at approximately 12:02 a.m. FARRO participated in a telephone call with MIGDAL about bringing money owed to the Cicalese Wireroom to Costa Rica.

t. On or about February 21, 2006, at approximately 6:44 p.m., LANGHORN CARTER RORER II, a/k/a "Lang," a/k/a "Cleaver," the defendant, participated in a phone conversation with MIGDAL about whether he had paid MIGDAL $10,900 or $11,000.

u. On or about December 28, 2005, in Washington, D.C., RORER II gave MIGDAL approximately $17,000 owed to the Cicalese Wireroom.

(Title 18, United States Code, Section 371.)

## COUNT TWO

(GAMBLING)

The Grand Jury further charges:

12. The Government repeats and re-alleges paragraphs

9

one through eight of the Indictment.

13. From at least in or about 2005, through the present, in the Southern District of New York and elsewhere, CARMEN CICALESE, a/k/a "Buddy," JULIUS MIGDAL, a/k/a "Jay," FRANCIS PUGLIESE, a/k/a "Butch," PATRICK CICALESE, MARC GROUP, a/k/a "Box," LOUIE SANTOS, a/k/a "Brown," a/k/a "Lou the Shoe," PAUL CELLURA, a/k/a "Coppertone," FEDERICO SEMENTINI, a/k/a "Macie," CARL MURACO, a/k/a "Sheepshead," KEITH EAGLE, a/k/a "Sands," ANDREW FARRO, a/k/a "Dukie," and LANGHORNE CARTER RORER II II, a/k/a "Lang," a/k/a "Cleaver," the defendants, did conduct, finance, manage, supervise, direct, and own all and part of an illegal gambling business, namely a business that facilitated and engaged in sports bookmaking, in violation of New York State Penal Law Sections 225.00 and 225.05, and which business involved five and more persons who conducted, financed, managed, supervised, directed, and owned all and part of it, and which business had been and remained in substantially continuous operation for a period in excess of thirty days and had gross revenues of $2,000 in a single day.

(Title 18, United States Code, Section 1955 and 2.)

## COUNT THREE

(MONEY LAUNDERING CONSPIRACY)

The United States Attorney further charges:

14. The Government repeats and re-alleges paragraphs

one through eight of the Indictment.

15.   From at least in or about 2005 through the present in the Southern District of New York and elsewhere, CARMEN CICALESE, a/k/a "Buddy," JULIUS MIGDAL, a/k/a "Jay," and PATRICK CICALESE, the defendants, and others known and unknown, unlawfully, willfully and knowingly did combine, conspire, confederate and agree together and with each other to violate Title 18, United States Code, Section 1956.

16.   It was a part and an object of the money laundering conspiracy that CARMEN CICALESE, a/k/a "Buddy," JULIUS MIGDAL, a/k/a "Jay," and PATRICK CICALESE, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that property involved in financial transactions represented the proceeds of some form of unlawful activity, unlawfully, willfully, and knowingly would and did conduct and attempt to conduct financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, illegal gambling, with the intent to promote the carrying on of a specified unlawful activity and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

17.    It was further a part and an object of the money laundering conspiracy that CARMEN CICALESE, a/k/a "Buddy," JULIUS MIGDAL, a/k/a "Jay," and PATRICK CICALESE, the defendants, the defendant, and other known an unknown, would and did transport, transmit, transfer and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States knowing that transportation, transmission and transfer represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A) and (a)(2)(B).

<u>Overt Acts</u>

18.    In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    On or about February 9, 2006, JULIUS MIGDAL, a/k/a "Jay," the defendant transferred money to the Cicalese Wireroom by providing Green Dot Card account information to a co-conspirator not named as a defendant herein.

b.    On or about December 16, 2005, at the direction of CARMEN CICALESE, the defendant, MIGDAL provided at least approximately $200,000 stored in a safe deposit box to PATRICK CICALESE, the defendant.

c.    On or about February 24, 2006, at the direction of CARMEN CICALESE, MIGDAL provided approximately $104,500 to a co-conspirator not named as a defendant herein who worked for a Pakistan-based hawala money transfer organization.

## FORFEITURE ALLEGATION

19.    The allegations contained in Counts One and Two of this Indictment are repeated, realleged, and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C), 1955(d) and 1956, and Title 28, United States Code, Section 2461.    Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Sections 981(a)(1)(C), 1955(d) and 1956, and Title 28, United States Code, Section 2461 in the event of any defendant's conviction under Count One, Count Two or Count Three of this Indictment.

20.    As the result of committing one or more of the gambling offenses in violation of 18 U.S.C. §§ 371, 1955 and

1956, alleged in Counts One, Two and Three of this Indictment, defendants CARMEN CICALESE, a/k/a "Buddy," JULIUS MIGDAL, a/k/a "Jay," FRANCIS PUGLIESE, a/k/a "Butch," PATRICK CICALESE, MARC GROUP, a/k/a "Box," LOUIE SANTOS, a/k/a "Brown," a/k/a "Lou the Shoe," PAUL CELLURA, a/k/a "Coppertone," FEDERICO SEMENTINI, a/k/a "Macie," CARL MURACO, a/k/a "Sheepshead," KEITH EAGLE, a/k/a "Sands," ANDREW FARRO, a/k/a "Dukie," LANGHORNE CARTER RORER II II, a/k/a "Lang," a/k/a "Cleaver," and GEORGE MARKAKIS, a/k/a "Eckers," the defendants, shall forfeit to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 1955(d) and 28 U.S.C. § 2461, any property, including money used in the gambling offenses, and all property, real and personal, that constitutes or is derived from proceeds traceable to the violations of 18 U.S.C. §§ 371 and 1955, including but not limited to the following:

a.    At least $4,000,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the gambling offenses, for which the defendants are jointly and severally liable; and

### Substitute Assets

21.  If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant(s) –

14

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant(s) up to the value of the forfeitable property.

(Title 18, United States Code, Sections 371 and 1955, and Title 28, United States Code, Section 2461(c)).

_____
FOREPERSON

_____
MICHAEL J. GARCIA
United States Attorney

15

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA
- v -
### CARMEN CICALESE,
a/k/a "Buddy,"
### JULIUS MIGDAL,
a/k/a "Jay"
### FRANCIS PUGLIESE,
a/k/a "Butch,"
### PATRICK CICALESE,
### MARC GROUP,
a/k/a "Box,"
### LOUIE SANTOS,
a/k/a "Brown,"
a/k/a "Lou the Shoe,"
### PAUL CELLURA,
a/k/a "Coppertone,"
### FEDERICO SEMENTINI,
a/k/a "Macie,"
### CARL MURACO,
a/k/a "Sheepshead,"
### KEITH EAGLE
a/k/a "Sands,"
### ANDREW FARRO,
a/k/a "Dukie,"
### LANGHORNE CARTER RORER II,
a/k/a "Lang,"
a/k/a "Cleaver,
**Defendants.**

### INDICTMENT

07 Cr. _____

18 U.S.C. §§ 656, 1344, 1349

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BIL**

Foreperson.